Mr. Lowry. Good morning. May it please the court. I'm Ira Lowy, CGA counsel for Mr. Medina. This case is a 2255 motion that was essentially tried before the magistrate judge on two issues, ultimate issues. The judge found, ultimately, that the defense lawyer was ineffective for first advising his client that if convicted by a plea or at trial, he would be sentenced as a career offender. And then, more importantly, by not advising the client that he had found out differently as part of his investigation. And all that's undisputed, and the district court said there was a deficient performance. And the government doesn't even appeal the deficient performance finding. I mean, you don't appeal that. The government doesn't appeal it. Correct. Is it a deficient performance start to finish, right? Correct. So now we're talking about prejudice. Help us with that. All right. Well, again, there was a full hearing on this, and this case was tried on the question of whether prejudice, on the question of whether Mr. Medina would have pleaded guilty but for the erroneous vice given by his client. The magistrate judge said the testimony was unrebutted. Correct. That's the key. He found . . . One of the problems was the unrebutted testimony. Well, he found two things. He found . . . Let me ask you a couple of questions. Sure. The magistrate judge included in the record before him everything that had happened in the case. That included the pre-sentence report, the interaction between counsel and your client before sentencing, and the sentencing hearing. Yes. There's not one word in the sentencing transcript or anywhere else in the record in which Medina questioned this business about being sentenced as a career offender. Nothing. As a matter of fact, the dialogue between the judge and Medina and counsel at sentencing tied down the proposition that they had discussed all of this, had no objections, and understand completely what his prior record was, basically. Well, I . . . I think that that yields an inference that rebuts his position that he wouldn't have gone to trial. I . . . That's evidence of it. I disagree for a very simple reason, is that we know at some point in time . . . Well, he never said anything on appeal. The case went up on direct appeal, and a lot of time went by before this issue even arose. Well, you've got to recall, you've got a defendant who, before trial, believed he was going to be sentenced as a career offender. After the trial is over, he's told by his lawyer, I've got good news for you. You're not going to be sentenced as a career offender. At that point, he's incredibly relieved. He didn't testify to that. I've got good news for you. Well, I'm paraphrasing. They went over the pre-sentence report, and there wasn't a career offender provision in it. Well, there's also the notation that the lawyer said that . . . He said, as expected, you're not a career offender. And then the testimony came out, or the judge found, the magistrate judge found, that this information was imparted to the defendant after the trial. And at that point, I would submit it would be very much against human nature for a defendant in his position not to be incredibly relieved that following a trial, he's not going to be sentenced to 21 years to life, but instead is facing a general sentence. And I certainly would not expect the defense lawyer or the defendant to get up and say, oh, judge, did you want to consider maybe that the PSI is wrong and I should be sentenced as a career offender? That makes no sense. There's other evidence that rebutted his position, and that is that he steadfastly said he was innocent. And that would be normal for a defendant who's made the decision to go to trial. He filed that document, a 64-page document, in which he said the lawyer should have introduced a lot of things before the jury to acquit him. I don't believe he filed a document. I know his sister filed a document. It was handwritten. Right. The sister filed a document, which he testified at the hearing he never even saw until the time of sentencing, which his lawyer got up and said, we're not adopting it, and which was basically pushed to the side. So nobody ever considered it. Wasn't there also evidence that counsel had supplied, quote, misinformation to Medina about the sentencing consequences of pleading guilty, unquote? Well, that was... Right. Was there evidence of that? Yes. He had... But what they're talking about, the sentencing consequences of pleading guilty, was that whether he pleaded guilty or went to trial, he was going to be sentenced as a career offender. So my question for you then is, if they're talking about that there would be sentencing consequences of pleading guilty, doesn't that show that he is considering pleading guilty at the pretrial stage? Yes. And in fact, he testified about that, that he said there were a couple of hearings, a couple of meetings with his attorney. At the first meeting, he asked about a plea of guilty, and he was told, I have to do more investigation. It looks like you're a career offender. And then his attorney came back with these possibilities, which was a three-page document written into evidence, handwritten by the attorney. So would that be some corroboration of his testimony during the evidentiary hearing that he would have pled guilty? Correct. In other words, it's not just his naked statement. There's some evidence from the period that occurred pretrial, when he would have been making a determination about whether he wanted to plead guilty, that he was considering pleading guilty. Yes, there was that testimony. Can I ask you this? It seems to me the magistrate judge, he filed a 2255, and then there was an evidentiary hearing on the 2255 before the magistrate judge, right? Correct. And your client testified? Correct. And there's no doubt there was some dispute about whether he would or would not have done a conditional plea, straight-up plea, open plea, whatever. And even if we take everything Judge Schofield is talking about, the sentencing transcript, there was a disputed issue of fact. Your client testified he would have pled guilty, right? Correct. And the magistrate judge, and I'm saying this so the government can respond, made a fact-finding that he would have done a straight-up plea if the lawyer had properly told him he was not a career offender. That was the fact-finding. Correct. And the district court didn't rehear any evidence. It just rejected that credibility fact-finding, and that's the problem. Is that correct? Yes and no, because if you read the order carefully, what the district judge sort of accepts that finding and then says, but he wouldn't have gotten acceptance of responsibility anyway, without any evidentiary basis to support that, other than, you know, citations, the fact that he maintained his innocence. Okay, so let's go back. The magistrate judge found the lawyer told him he was a career offender. Before trial, he found out was not a career offender, and he never told your client. That's established. Yes. So he got deficient performance. Yes. So now we're on to prejudice. And so the prejudice comes down to when he was sentenced, even after trial, the district court didn't do any enhancements. He just didn't give him the three reduction for acceptance. Correct. So we're down to the sentence differential is the three-level deduction for a guideline range, I think it's 37 to 51 versus, what is it? I'm not sure of the calculations, but it's a significant amount of time, at least a couple of years. If he had gotten acceptance, it would be 37 to 46. Because he didn't get acceptance, he, what, had 51 or something. It's a 14-month difference. Correct. What was interesting to me is the district court even gave him the low end after trial of the guidelines range. Correct. Yes. Which indicates that had he made an open plea, and, by the way, this entire case was tried on the fact that he said he would have pled openly to the court. The additional plea aspect was dropped, and, in fact, the only time it was addressed was by the prosecutor in cross-examination when he said no. One last question, then I'll stop. So if you're right, if he shows, I would have done a straight-up plea, I mean this court gave him low end even after trial, there's a good reasonable probability by preponderance he might have gotten that acceptance if he hadn't gone to trial. And so tell me what a remand would say. It would be only a conditional remand for him to enter a guilty plea and be an unconditional guilty plea and resentence. That's what has to happen, right? Correct. Unconditional guilty plea, if he does that, then a resentencing. I mean we could or we could just, he admits his guilt, which he has done at this hearing. I don't even know if you need to do a guilty plea at this point, just have a resentencing proceeding. He would obviously submit an acceptance or responsibility statement. And treat him as if he had pled guilty ab initio. Exactly. I mean cut unnecessary time and expense and get to the meat of it. I don't know if you have a guilty plea. It seems like you've got to have . . . you've got to ask some questions. The district court, we can't just say there's a guilty plea now in 2055. But anyway, you've answered my question. He has to plead guilty because otherwise the conviction is still standing and it could be collaterally attacked, put aside the statute of limitations. And a guilty plea couldn't. Yeah, he has to have a guilty plea and a new sentence date to trigger whatever he wants to do after that. I don't think you can just say resentencing. I mean ultimately he has to have a resentencing because the prejudice was in the sentencing. But if the court feels that the proper procedure is to vacate the conviction contingent on him entering the plea of guilty, that's fine too. I've done those. I have done that in the past where the court reversed and sent it back for a new entry of a plea. You've saved some rebuttal time. All right. Thank you. Ms. Schultz. May it please the court. My name is Ann Schultz. I'm an Assistant United States Attorney. I represent the United States, the Appellee in this matter. With me at council table is Assistant United States Attorney Mark Anton who handled the matter in the district court. The magistrate judge, Judge Hall, said that the defendant was advised by his counsel that he might be a career offender. He did not say that he would absolutely be a career offender. He said that based on the testimony of Mr. Spivak, he initially told him that he might be a career offender. The district court judge accepted that finding that he might be a career offender. The judge also found that at some point, Mr. Spivak determined that he was not a career offender. There was a question then as to whether Medina said that he was never told. The defense attorney said, no. I told him at some point. I can't remember when. Judge Blum declined to make any credibility finding as to that because it didn't matter because she ultimately determined . . . Judge Blum couldn't do that because this is a fact issue in the first place. She's bound by the clearly erroneous rule. Your Honor, the government at that point when she said . . . the government had filed objections. Yeah. Asking the court to re-rehear the testimony on two points. The two points where the magistrate judge had found that the testimony of Medina was unrebutted. The one being that point as to whether he was ever told by his counsel. The second time being as to the prejudice prong, whether . . . the question of whether it was rebutted that he would have accepted the plea. Both the magistrate and the district court found performance deficiency. The government has not cross appealed the performance finding. Your Honor, I'm sorry. I was just trying to . . . Or not even in your reply brief raised that the district court or the magistrate judge erred in saying there was deficient performance. Is that correct? That's correct. I was trying to just clarify . . . We're not here about performance anymore. We're here about prejudice. We did not challenge it. On the prejudice aspect, Your Honor . . . And the factual predicate for prejudice. Correct, Your Honor. I think it's important because two parts. One, when you look at the district court's certificate of appealability, she clarifies the fact that she never actually made any credibility findings as to whether or not the defendant would have accepted the plea. What the magistrate judge found was unrebutted. I'm sorry to interrupt, but something struck me as a little bit . . . I didn't quite understand because there's this part where she says, well, he would have pled guilty conditionally. That seems like it is a new factual finding because I thought the magistrate judge had determined that he would have pled guilty to an open . . . He would have made an open guilty plea. First of all, am I understanding that correctly? Second of all, if I am, isn't that also a problem because it's a new factual determination without an evidentiary hearing? Your Honor, as the government noted in the brief, there's certainly a district court order in saying both that she was accepting the magistrate judge's finding that it was unrebutted, the testimony that Medina would have pled straight up, an open plea, but she also looked very strongly at the part of the sworn 2255 motion of Medina that said, I would have pled conditionally. The government's position in talking about the fact going to corroboration, when you have to look at the contemporaneous statements at the time and not just the testimony of . . . Implicitly, the magistrate judge disregarded what was in the petition. Yes, Your Honor. I have one other observation. It's a very bizarre COA. It is. Extremely bizarre. The question is whether we should exercise our inherent power and, in effect, reframe the COA, which is whether or not the district judge, in my view, erroneously rejected the magistrate judge's findings on prejudice. Findings meaning the factual underpinnings of prejudice. That's what's involved here. Do you agree? Yes, Your Honor. I think that, and I agree with you, the phrasing of the certificate of appealability is unusual and difficult. I thought the COA just said whether he received ineffective assistance of trial counsel in his criminal proceedings. That's the COA, right? No. No? That's not the one? No. In the motion for the COA, that's more the way it was phrased by counsel. Okay. The district court judge rejected the phrasing because, she said, phrased that way, the judge found that it implied that the district court had made credibility findings that it did not make. Okay. What does the COA say? Can you tell me? Because then I'm confused. I don't have it in front of me. Basically, the COA says whether or not after accepting the magistrate judge's findings that . . . Here's what it says. Thank you, Judge. The court believes that the proper issue is whether a finding of a lack of prejudice is proper where the court rejects the magistrate judge's legal conclusion of prejudice and determines, based on the record, that the result of the proceeding will not have been different. I don't understand. That's why I raised the question. It's a very bizarre COA. I will say I struggled with . . . Which the district court can reverse, basically. Correct. My interpretation, having read the order and the R&R many times, is I think what the district court was saying is, look, I don't have to make these credibility findings that the government objects to and wants me to hold a hearing. The reason I don't need to hold a hearing, because even if you accept the would have, more importantly, on the prejudice, that he would have made an open plea, I find that he has not legally shown prejudice because I would have given him the same sentence. I think part of that . . . She says that. She's trying the case all over. She says that because he took the position that he was not guilty and went to trial. After trial, when he was found guilty and he was still trying to appeal, he continued to say he was not guilty. None of those things would have happened had he pled guilty in the first place. All of that stems from the fact, if we accept that he was given poor advice, that all of that stems from the deficient performance. If he had pled guilty originally, there would have been no reason for him to say I wasn't guilty. The guilty plea wouldn't have been accepted. He wouldn't have had to insist that he wasn't guilty, but because he wanted to go on appeal on some of these issues, he had to continue to insist that he was not guilty. It seems like she was considering it, the fact that there was no prejudice based on the alternative . . . not based on the alternative universe, but based on what actually happened. That seems to me like it might be problematic. Maybe it's not, and if you think so, then you can tell me why. Well, Your Honor, I think it's part of the problem we have with Lafler. On one hand, you have, as this case, the court has said at times, you can't unring the bell, but on the other hand, I agree that inherent in a situation where you're talking about deficient advice regarding a plea and whether or not the defendant would have accepted the plea, you really are trying to go back in time in that sense. I think it's also very important here, and I think the conditional plea aspect is important, if I can phrase this in a way to make it clear. You have the defendant, and he admitted throughout from the moment he was talking to his attorney in private, always saying that he would have pled guilty, or excuse me, got that wrong, that he was innocent and demanded to go to trial. He said that even after sentencing. I think that the district court judge could consider that in the sense of looking at it in terms of the fact that acceptance is just not automatic. I think that was a big part of the district court's order when she was saying that, and I think part of the reason Judge Schofield, while she was rejecting the magistrate judge's legal finding on prejudice, is because the magistrate judge doesn't really talk about acceptance at all. I believe the R&R uses the term that if he had entered an open plea and it had been accepted, then they would have had the option of having the reduction for acceptance. I think another critical aspect of this is there's nothing in the record talking about . . . Then he would have had no reason to say he wasn't guilty. It is inconsistent. He wouldn't have been able to enter the guilty plea and still insist he was innocent. Is that fair to say? I'm sorry. Could you phrase that for me one more time? Sure. If he had pled guilty originally, then it never would have happened that he would have insisted that he was innocent to the court because the court could not have accepted the guilty plea if he continued to insist he was innocent, right? Correct. Okay. So that being the case, there's no other conduct that the judge points to that caused her to conclude that he would not have been eligible for the two or three points, whichever it is, right, because it could have been two points also for acceptance of responsibility. There's nothing else that she points to in the record to say, I would not have awarded acceptance of responsibility. And so the question is, right, can she consider that conduct when we are going back to sort of unring the bell, right, and figure out what the prejudice is? I think she can consider it in this context. The judge's order talks not just about whether he would have been able to get through the plea colloquy, that's accepted, but also the aspect of relevant conduct. And I think it's fair for the district court to have looked at the full record in this regard. You have a defendant . . . Medina not only said, I'm innocent and said it from every step of the way, even after sentencing and always with his lawyer, even in private conversations, as the court noted. He also affirmatively wanted to testify. He wanted to take the stand. But he didn't. He didn't. But I think when the judge is looking at it, because his theory of defense, as the court knows, is, hey, not my drugs, not my gun. It's all the owner of the house, Israel. And I think that's very important and an appropriate thing for the judge to look at, because when you're talking about acceptance and not treating this as an automatic, okay, you plead guilty, you get acceptance, here's someone who would have to also have shown that he was not going to minimize his conduct and would also accept and admit all of the relevant conduct. But we don't know what he would have done. Let's say he had pled guilty, right, and we get to the sentencing hearing and then he allocuted. We don't know what he would have said. Maybe he would have decided not to allocate. Who knows? But maybe he would have said, you know, I did it, I feel terrible about it. You know, maybe he wouldn't have. I don't know. But that's the whole point. We don't know what would have happened. So how can we make a determination about whether he would or would not have gotten acceptance of responsibility if we could unwind everything and go back to that point in time? That's kind of the problem. It is. It's difficult. And I think that's one of the reasons when talking about the remedy aspect of Lafler and that aspect, the Supreme Court said, we'll let the lower courts figure a lot of this out. And it's difficult because on the one hand, again, how do you unring the bell? But on the other hand, the courts tries. And I think in this situation where you have a defendant who proclaims his innocence, was always willing and not only willing, eager from what Mr. Spivak's testimony was, and that testimony was he was found to be a forthright and candid witness, that you have someone who the district court in looking at the total picture could say, you know what, even at the hearing, he didn't go into saying anything more than I would have pled guilty because I wanted a lower sentence. If I had known that I could get a little over, I believe it's eight years, then I would have pled guilty. He never talked about in terms of, yes, I am guilty. You know, I would have fully admitted all of the conduct. I would have said no when I tried to have testimony to blame others, when I tried to get Israel to testify. Those things I wouldn't have done. We don't have anything in the record of that. All we have is basically the defendant saying, if I would have pled guilty, I was automatically entitled to an acceptance of responsibility, and that's the legal point that the district court rejected. The problem with this case is the district judge says, I would have done such and such, right? It wouldn't have made any difference. Isn't that what the district judge said? Yes, that is, Your Honor. What the district judge in effect said was, if I granted the 2255 because he was ineffective, I'm now going to impose the same sentence. This is just bizarre because the district judge is adding facts to the evidentiary hearing that was conducted before the magistrate. I accept the magistrate's findings, but I'm now going to give you some facts of what I would have done, which is irrelevant. I'm sorry. That doesn't fit the litigation model is what I'm trying to say. Your Honor, again, that's one of the reasons why the government also said that if the court found that the district court erred in saying that the prejudice hadn't been established, that this really should go back down because when you look at the COA, the court . . . The COA is bizarre. I've never seen one like it. We can expand the COA to whatever you want to say. You all have briefed it on whether there's prejudice. You've briefed it well beyond the little narrow issue in the COA. Anyway, just to give you a chance, if we are and we haven't conferred, so I don't know, if we do conclude the magistrate judge made a fact finding, the district court couldn't . . . It was based on credibility, but it was a straight-up plea. The district court can't change that to a conditional or do what she did, and we are to send it back down. Let's assume we say, give him, what, two months to enter or he doesn't enter an unconditional plea, then his sentence is affirmed. We can do that. I mean, you agree, if we were to vacate, we have to . . . We can't just say, re-sentence. We need to make him enter a plea. Yes, Your Honor. I think that would be the appropriate course to have him re-enter a plea. All three charges in the indictment and then get sentenced on them. Yes. At which point, the judge can, under the sentencing and implying the appropriate remedy, can consider the full remedy and whether the sentence should be the same. Well, that will be a new sentence and maybe a new appeal, depending on . . . Yes, Your Honor. I don't know. I'm not worried about that right now. We got it. Thank you. We have your case. Thank you. The last . . . Oh, you got some rebuttal time. Unless you want to quit while you're here. I just . . . Is there anything you want to add? I just did want to point out the magistrate considered all of that conduct in his order. He applied the correct legal standard, so there's no question that he made a credibility finding in favor of my client on that. Obviously . . . She says we should really tell the district court. If you want to reject that, you got to have a whole other evidentiary hearing, have everybody come back, do all that, but what do you say about all that? Exactly. The court would have to have done that. The law permits the district judge to reconsider, but she's got to hold another hearing. I will say that at a new sentencing, the judge, under the case law, it's very clear the judge does a new sentencing almost de novo in the sense that she can consider everything. She may decide at a resentencing that he doesn't deserve acceptance, or she may decide he does, but that's based on the evidence . . . She might have disqualified herself. I'm sorry? She may have disqualified herself because she announced on the record what she would do in the future without having any argument presented to her. That's another issue for another day. I think you all can work this out. I think we've heard enough. I think you can play and probably agree on the sentence or something like that. All right.